## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Robert Keating,<br>　　　Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:20cv550 (LO/TCB) |
| | ) | |
| B. Meade, et al., | ) | |
| 　　　Defendants. | ) | |

### MEMORANDUM OPINION

Proceeding pro se, Virginia inmate Robert Keating ("Keating" or "plaintiff") initiated this civil rights action pursuant to 42 U.S.C. § 1983, and alleges in his amended complaint that defendant Barbara Meade ("Meade" or "Defendant") violated his constitutional rights to adequate medical care by delaying the scheduling of his oral surgery and denying him pain medication. Meade has filed a motion for summary judgment, with a supporting brief and exhibit. [Dkt. Nos. 24, 25]. Keating has been afforded the opportunity to file respond pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has done so. [Dkt. No. 28]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, Meade's motion for summary judgment must be granted and this matter must be dismissed.

### I. Facts

Plaintiff is currently incarcerated at the Rappahannock Regional Jail ("RRJ"). Defendant Meade is the Health Services Administrator at RRJ. [Id. at 1]. RRJ contracts with Rappahannock Creative Health Care ("RCHC") to provide medical care for RRJ inmates. [Dkt. No. 25-1 at 1-2]. Keating alleges in his amended complaint that in "early to mid-2019" he "broke his tooth on a hard substance in the bean portion of a [food] tray" [Dkt. No. 12 at 5] and that he filed "multiple" request forms prior to being seen by the dentist on August 1, 2019. [Id.

at 4]. Keating's opposition to the motion for summary judgment does not dispute Meade's declaration and the medical records attached thereto that show Keating submitted a request on July 4, 2019, his first complaint about his tooth, and that Keating was seen by the dentist on four occasions: August 1, 2019, January 22, 2020, March 25, 2020, and May 5, 2020.

On July 4, 2019, Keating submitted an RRJ Medical Request Form stating his "tooth [was] broken, painful & swollen, [he] need[ed] to see dentist." [Dkt. No. 25-1 at 6]. Keating saw the dentist for an oral exam on August 1, 2019. The oral exam found severe decay and an abscess on Keating's Number 18 molar and the dentist concluded that Keating needed an "oral surgeon for extraction of #18," possibly a panoramic x-ray, and that Keating's need was "average," and his therapeutic level was routine. [Id. at 8, 11]. The dentist prescribed "Pen V" and "Motrin." [Id. at 8].[1] On August 1, 2019, RCHC's Utilization Review Manager denied the oral surgery consultation. [Id. at 11]. Only RCHC staff have the authority to authorize medical, dental, and surgical treatments, which is done through RCHC's Utilization Review Process. [Id. at 2, ⁋ 15]. As RRJ's Health Services Administrator, while Meade routinely scheduled off-site referrals, Meade did "not have the authority to approve or deny treatments." [Id. at 2, ⁋ 14].

The Utilization Review Manager denied the referral to the surgeon because other inmates were ahead of Keating that had dental issues of above average or average. (Id. at ¶ 15). RRJ has a large number of inmates in need of dental care and often times there are significant delays between scheduling appointments and in some cases the need to evaluate before scheduling. Further, RRJ's Transportation Department can only schedule three offsite transfers to outside

---

[1] "Penicillin V potassium is used to treat certain infections caused by bacteria such as pneumonia and other respiratory tract infections, scarlet fever, and ear, skin, gum, mouth, and throat infections." See https://medlineplus.gov/druginfo/meds/a685015.html (last viewed Jan. 11, 2021).

medical facilities for non-emergency appointments per day.  The scheduling of offsite

appointments takes into consideration the urgency of the inmate's medical/dental need as well as

the offsite provider's availability.  Consequently, inmates with less urgent issues sometimes face

significant, yet unavoidable delay.  [Id. at 2-3, ¶ 17].

The dentist saw Keating again on January 22, 2020 and noted Keating's need was still

"average" but raised his Therapeutic Level to "necessary," requested approval for oral surgery

for same molar, noted that Keating had been previously placed on the oral surgeon list on August

1, 2019 [Id. at 3, ¶¶ 18-20; 12], and that Keating "has meds."  [Id. at 8].  On January 24, 2020,

Meade sent RCHC staff the dentist's request for authorization for oral surgery and the Utilization

Review Manager denied the request because there were still inmates with dental issues of above

average or average ahead of Keating.  [Id. at 3 ¶ 22).

Keating saw the dentist again on March 25, 2020.  The dentist reaffirmed that Keating

needed to see an oral surgeon to remove molar Number 18, and raised Keating's need to

"average, or slightly greater than average," and prescribed Pen V and Motrin.  [Id.].  The medical

records reflect that on March 27, 2020, medical staff were told to contact the oral surgeon "to

schedule Keating to see the oral surgeon" and that the oral surgeon's office informed RRJ's staff

that "they [were] not currently scheduling" patients due to the COVID-19 restrictions.  [Id.].  On

March 1, 2020, the oral surgeon had stopped scheduling appointments due to COVID-19.  [Id. at

4, ¶ 25].

The dentist continued to evaluate Keating and saw him again on May 6, 2020.  The

dentist prescribed pain medication and an antibiotic for Keating and noted the same findings

from the previous visits, except that he raised Keating's need to "slightly greater than average."

[Id. at 7].  At that time, the outside oral surgeon had resumed seeing previously scheduled

patients on a limited basis due to COVID and Meade made a special request to Dr. Butterfield, the outside oral surgeon, to see Keating.  [Id. at 4, ¶¶ 26-28).  On June 19, 2020, Dr. Butterfield's first day working at RRJ, he saw Keating and extracted molar Number 18.  [Id. at 4, ¶ 29].

## II. Standard of Review

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. See Celotex, 477 U.S. at 323-25.  In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact exist that must be resolved at trial.  See id. at 324; Anderson, 477 U.S. at 248.  The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element.  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The non-moving party, however, must show more than some metaphysical doubt as to the material facts.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his

4

pleading but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes

v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 256). Conclusory

allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a

scintilla of evidence will not carry this burden. See Anderson, 477 U.S. at 249-50. There must

be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. The

judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a

preponderance of the evidence that the opposing party is entitled to a verdict.

When a defendant moves for summary judgment on ground that the plaintiff lacks

evidence of an essential element of his claim, to ward off the grant of summary judgment the

plaintiff must present either admissible documents or attested testimony, such as that found in

depositions or in affidavits, that demonstrates the existence of genuine issue of material fact; the

evidence need not be in admissible form, but the evidence's content must be admissible in the

sense that a change in its form, but not its content, would make the evidence admissible at trial.

See Celotex, 477 U.S. at 324. Hearsay "is neither admissible at trial nor supportive of an

opposition to a motion for summary judgment." Greensboro Professional Firefighters Ass'n v.

City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Such "second-hand" information learned

from others fails to satisfy a plaintiff's burden "to survive a motion for summary judgment."

Monk v. Potter, 723 F. Supp. 2d 860, 875, 878 (E.D. Va. 2010) (citing Greensboro, 64 F.3d at

967; Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1121 (10th Cir. 2007) (noting that

statements conveyed to plaintiff were "second-hand" and inadmissible hearsay in opposition to

summary judgment); Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 89-90 (D.D.C.

2006) (purported events related by plaintiff in her own deposition were based on second-hand information rather than personal knowledge and were therefore inadmissible hearsay for summary judgment purposes); Fed. R. Civ. P. 56(e)(supporting or opposing summary judgment affidavits must be based on "personal knowledge")).

### III. Deliberate Indifference

An Eighth Amendment claim relating to medical care in prison requires a plaintiff "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, plaintiff must allege two distinct elements to support a claim.  First, he must allege a sufficiently serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Second, a plaintiff must allege that the defendant was deliberately indifferent to his serious medical need.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation.  See Estelle, 429 U.S. at 106.  Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them."  DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).  Significantly, a prisoner's disagreement with medical personnel over the course of his treatment is inadequate to state a cause of action.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Here, the defendant admits that the dentist's referral of plaintiff's Number 18 molar to an oral surgeon is sufficient to establish a "serious medical condition," and therefore Keating has satisfied the first prong.  Keating, however, has not met his burden of establishing a genuine

6

issue of fact that Meade has been deliberately indifferent to his medical need, or that he was denied pain medication during the ten-month delay from initial diagnosis until the tooth was extracted.

Delay of, or interference with, medical treatment can also amount to deliberate indifference. See Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The Fourth Circuit has held that there is no Eighth Amendment violation

> unless "the delay results in some substantial harm to the patient," such as a "*marked*" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." See Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); see also Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018). Substantial harm may also be "a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Corr. Inst. Inmate v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and *the ease of providing treatment*." Id. at 758 (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

In her declaration, defendant Meade states that she has no "authority to approve or deny treatments." [Dkt. No. 25-1 at 2, ¶ 14]. In response, Keating states that he "was told by RRJ staff that B. Meade was in charge of scheduling and approving any outside surgeries." [Dkt. No. 28 at 2]. Keating points to the denial form attached to Meade's affidavit as evidence that Meade had the authority to refer him to the oral surgeon stating Meade's signature is next to the word "Denied," which was circled. [Id.; Dkt. No. 25-1 at 12]. Keating also alleges that Meade

"denied [him] pain meds." [Dkt. No. 28 at 2]. Keating's response does not create a genuine issue of material fact.

Keating's assertion he "was told" defendant Meade had authority to approve a referral is clearly hearsay and as such is an insufficient basis to withstand the motion for summary judgment. See, supra at 5-6. Likewise, his assertion that her name is next to the circled word denied [Dkt. No. 25-1 at 12] is a distortion and mischaracterization of the form to which he refers. The portion of the form to which Keating refers has two lines, one for the Chief Nurse or Health Services Administrator (Meade) and a second line below the first line for the Utilization Review Manager. On the same level as the Utilization Review Manager's signature line there are two preprinted words, Approved and Denied. Coupled with her affidavit and the structure of the form, it is clear that Meade's signature is on the first line as she is the Health Services Administrator. The signature on the Utilization Review Manager line, which is level with the words "Approved" and "Denied," is not Meade's. The Utilization Review Manager circled "Denied," not Meade.

Finally, Keating has not established any substantial harm from the delay. Meade states in her declaration that after his first visit to the dentist on August 1, 2019, Keating was reevaluated on a regular basis and he continued to receive medication[2] for pain management and infection prevention [Dkt. No. 25-1 at 4; 7-8; 18-22], which is supported by the medical records, and Keating has presented no evidence of a lifelong handicap or permanent loss. Moreover, as an

---

[2]  The dentist prescribed ibuprofen for Keating on July 11, 2019, July 29, 2019, August 1, 2019, August 26, 2019, November 3, 2019, November 14, 2019, March 26, 2020, and May 3, 2020. [Dkt. No. 25-1 at 18-19]. The medical records establish that the dentist prescribed Penicillin V for Keating on July 11, 2019, August 1, 2019, November 3, 2019, January 1, 2020, and March 26, 2020; and that he switched Keating to Clindamycin, an antibiotic, on May 7, 2020. [Id. at 18, 20]. See https://www.webmd.com/drugs/2/drug-12235/clindamycin-hcl-oral/details (last viewed Jan. 11, 2021).

administrator, Meade was entitled to rely on the treating dentist's medical judgment to determine

what treatment, *i.e.* which medication to prescribe for pain, was medically required.  See Shakka

v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); see also Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir.

1990) ("No record evidence suggests why [defendant] should not have been entitled to rely upon

[prison's] health care providers' expertise" for appropriateness of evaluation or care previously

provided to inmate).[3]  Further "courts have repeatedly declined to find that a medical provider

was deliberately indifferent to an inmate's medical needs when a plaintiff challenges the type

and quantity of pain medication."  See Acosta v. Thomas, No. 9:16-CV-0890 (LEK/TWD), 2019

U.S. Dist. LEXIS 105161, at *35 (N.D.N.Y. June 21, 2019) (internal quotations and citations

omitted) (collecting cases).  Keating's conclusory assertion that he was denied pain medication

without reference to any specific date or circumstance is insufficient in light of the specific

averments of the defendant, which are supported by the undisputed medical records.  See Dulany

v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that

treatment was provided and physician affidavits indicating that the care provided was adequate,

an inmate cannot create a question of fact by merely stating that she did not feel she received

adequate treatment.").

---

[3] This Court cannot second guess the dentist's medical judgment that the pain medication
provided to Keating was medically appropriate for his condition.  See Snipes v. DeTella, 95 F.3d
586, 592 (7th Cir. 1996) ("how pain associated with medical treatment should be mitigated is for
doctors to decide free from judicial interference, except in the most extreme situations.");
Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that types of medication
prescribed are generally matters of medical judgment); Russell v. Sheffer, 528 F.2d 318, 318 (4th
Cir. 1975) (a doctor's medical judgment is "not subject to judicial review"); see also Lockett v.
Bonson, 937 F.3d 1016, 1024 (7th Cir. 2019) (holding, in Eighth Amendment context, that "[t]he
decision to prescribe non-narcotic pain medication was within the bounds of professional
judgment); Reyes v. Gardener, 93 F. App'x 283, 285 (2d Cir. 2004) (concluding defendants'
decision to prescribe Tylenol or Motrin to manage prisoner's pain and to administer Demerol or
morphine only when necessary did not constitute deliberate indifference).

Keating has failed to refute Meade's evidence that she did not have the authority to approve the referral to the off-cite oral surgeon or that she in any way delayed his treatment. To the contrary, the undisputed evidence establishes that defendant Meade's involvement was nothing more than scheduling the off-site treatment after it was approved by RCHC's Utilization Review Manager. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (in addition to alleging a defendant's deliberate indifference to his medical needs, plaintiff must also prove causation between that indifference and his injuries); Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("constitutional torts … require a demonstration of both but-for and proximate causation" and "intervening acts of other[s]" may "insulate" a defendant from liability

Moreover, the delays that did occur in the approximate ten months after the dentist determined Keating needed to be referred to an oral surgeon were not due to deliberate indifference. Instead, they were due to the approval process, scheduling limitations, transportation limitations, and the COVD-19 pandemic. District courts have discussed the difficulties in scheduling and transporting inmates for outside medical treatment in the context of delay and have "refused to find deliberate indifference where delays in treatment were caused by circumstances that were outside the control of the charged officials. The logistical difficulties involved in scheduling outpatient appointments and transporting prisoners to outside facilities can present one such circumstance." Madera v. Ezekwe, No. 10 Civ. 4459 (RJD) (LB), 2013 U.S. Dist. LEXIS 171948, *33-34 (E.D.N.Y. Dec. 2, 2013). Other recognized intervening circumstances include needing approval by other authorities, see, e.g., Coleman v. Cal. Dep't of Corr. & Rehab., No. CV 06-2606-JFW, 2009 U.S. Dist. LEXIS 139581, *15-16 (C.D. Cal. Sept. 30, 2009) (contract doctor entitled to summary judgment on claim he was deliberately indifferent to a medical need because while he had authority to recommend a knee brace but not the

10

authority to provide the inmate with a brace), adopted by 2009 U.S. Dist. LEXIS 113108 (C.D.
Cal. Nov. 23, 2009), aff'd, 418 Fed. Appx. 657 (9th Cir. 2011); Henderson v. Sommer, 2011
U.S. Dist. LEXIS 37202 at * (S.D.N.Y. Apr. 1, 2011) (granting summary judgment as to
plaintiff's Eighth Amendment claim because the delay in surgery resulted from a third-party's
scheduling constraints); and other medical issues. See, e.g., Rivera v. Aulepp, No. 16-3225,
2017 U.S. Dist. LEXIS 201022, *8 (D. Kan. Dec. 6, 2017) (defendants were not deliberately
indifferent to inmate's medical need because intervening circumstances – inmate voluntarily
getting a tattoo and also developed stomach ulcers – resulted in the delay were beyond the
defendants control). The COVID-19 pandemic is another situation over which RRJ, RCHC, the
dentist, defendant Meade, and the oral surgeon had no control. It is regrettable that the pandemic
delayed Keating's referral to the oral surgeon by approximately three months, but it is simply
another scheduling issue over which no one had control.

   Even though none of the delay is attributable to defendant Meade, a delay in medical care
is only a constitutional violation where the prisoner can show that the delay resulted in
"substantial harm," which may be satisfied by "lifelong handicap, permanent loss, or
considerable pain." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (citation omitted).

   In sum, in August 2019, the dentist initially classified Keating's need to see an oral
surgeon as average and his therapeutic level as routine. The referral was denied by the
Utilization Review Manager. Keating was seen by the dentist on January 22, 2020 and the
dentist noted Keating's need was "average," but raised his Therapeutic Level to "necessary."
Again, the Utilization Review Manager denied the referral. On March 1, 2020, the oral surgeon
stopped scheduling patients because of the restrictions imposed due to the COVID-19 pandemic,
a matter that was clearly beyond RCHC's Utilization Manager's control, as wells as defendant

11

Meade's. On March 25, 2020, although the dentist reaffirmed that Keating needed to see an oral surgeon to remove molar Number 18, he increased Keating's need to "average, or slightly greater than average." Keating's referral to the oral surgeon was approved but when RRJ tried to schedule an appointment with the oral surgeon the medical staff was told he was not scheduling patients due to COVID-19.

Keating next saw the dentist on May 6, 2020 and the dentist confirmed his prior diagnosis and elevated Keating's need to "slightly greater than average." RCHC approved Keating to see the oral surgeon who, by that time had started scheduling patients again. Meade called and scheduled the referral and the oral surgeon extracted Keating's Number 18 molar on June 19, 2020. Meade did not delay Keating's referral to the oral surgeon or deny him pain medication.

## V. Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Dkt. No. 24] must be granted. An appropriate order will issue separately.

Entered this ____12th____ day of ____January____ 2021.

Alexandria, Virginia

/s/ _____

Liam O'Grady
United States District Judge

12